IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN ACORD, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. H-09-2587** |
| | § | |
| ELIZABETH SAENZ, Acting | § | **MISC. CASE NO. H-09-0392** |
| United States Marshal for the | § | |
| Southern District of Texas, | § | |
| | § | |
| Respondent. | § | |

## OPINION

The petitioner, John Acord, is currently in custody of the United States Marshal for the Southern District of Texas pursuant to an arrest order that issued after Acord was found in civil contempt by the United States District Court for Maryland.  Acord, who resides in Magnolia, Texas, voluntarily surrendered at the federal courthouse in Houston on Friday, August 14, 2009, and promptly filed a petition for a writ of habeas corpus for his release. After considering all of the pleadings, records, and argument presented at an evidentiary hearing, the Court denies the petition for reasons discussed further below.

## I.    BACKGROUND FACTS

This habeas corpus proceeding stems from a civil action in the United States District Court for the District of Maryland between two companies and their founders, who were engaged in selling health and beauty supplements over the internet, *Young Again Products, Inc. v. John Acord a/k/a John Livingston, Marcella Ortega, and Young Again Nutrients, LLC*,

Civil No. 8:03-2441 (D. Md.).  In that case, Young Again Products, Inc. ("YAP") filed suit against Acord, his mother Marcella Ortega ("Marcella" or "Ms. Ortega"), and the company owned and operated by them, Young Again Nutrients, LLC.  YAP sued Acord, his mother, and their company for breach of contract, trademark infringement, unfair competition, and copyright infringement for unlawfully distributing health and beauty supplements bearing the plaintiff's trademarks over the internet.  (Md. Doc. # 59, Amended Complaint).[1]  YAP reportedly incurred damages in the amount of $3,710,589.00 as a direct result of infringement by Acord and his co-defendants.  (Md. Doc. # 156, Supplemental Complaint). YAP also reportedly suffered an additional $122,243.40 in damages as a direct result of Acord's breach of contract.  (*Id.*). Acord promptly filed a counter-claim against YAP and its president, Roger Mason, seeking declaratory relief as well as damages for "commercial disparagement, libel, defamation, and tortious interference with business."  (Md. Doc. # 38).

The Maryland litigation between Acord and Mason, now pending for over six years, has been hotly contested and unusually contentious, spawning additional civil proceedings against a successor corporation, Supplement Spot, LLC ("Supplement Spot") that Acord and his family members formed, apparently in response to a court order in federal litigation in Utah, in order to continue their health-and-beauty supplement business without infringing

---

[1]  All docket entries in the "Background" portion of this Memorandum and Order, designated "Md. Doc." refer to instruments and court orders entered in *Young Again Products, Inc. v. John Acord a/k/a John Livingston and Young Again Nutrients*, Civil No. 8:03-2441 (D. Md.). Docket entries in the pending habeas proceeding are cited as "Doc."

on YAP's trademark.[2]   The parties also have battled in Supplement Spot's bankruptcy case and related adversary proceedings.[3]   The Court has gleaned that Acord and Mason originally were business partners of some sort, but thereafter had a falling out and became commercial rivals.  In each litigation, each side has lodged vicious accusations of unfair practices by the other.[4]

Acord has represented himself at times during the Maryland case, although it appears that there was some hybrid representation, with Acord appearing both *pro se* and by retained counsel.  Although Acord has proceeded *pro se* since April of 2008, he received advice (according to his own testimony) through March of 2009, from the lawyer who represented Acord previously and who has continued to represent Ms. Ortega, with whom Acord had completely aligned interests.[5]  Ms. Ortega was represented by counsel in the Maryland matter

---

[2]     *See Dodart et al. v. Young Again Products, Inc.*, Civil No. 2:03-0035 (C.D. Utah);  *Young Again Products, Inc. v. Supplement Spot LLC, et al.*, Civil No. H-08-2419 (S.D. Tex.).   It is noted that no documents are in the record establishing the corporate identity of Supplement Spot or any of the other entities referred to at the hearing or in this ruling.

[3]     Supplement Spot filed a voluntary petition under Chapter 11 of the Bankruptcy Code on for bankruptcy on November 3, 2006.  *In re: Supplement Spot, LLC*, Bankruptcy Case No. 06-35903 (S.D. Tex.).  Various adversary proceedings and related appeals to the district court are pending: *Young Again Products Inc. v. Supplement Spot, LLC, et al.*, Adv. No. 07-3019 (S.D. Tex.); *In re: Supplement Spot, LLC*, Civil No. H-09-1144 (S.D. Tex.); *Acord v. United States Trustee*, Civil No. H-09-0856 (S.D. Tex.).

[4]     Acord, in particular, has accused Mason of instigating a criminal investigation against him by the U.S. Bankruptcy Trustee in Houston, the United States Attorney, the Internal Revenue Service, the Food and Drug Administration, "and other law enforcement agencies."  (Md. Doc. # 201).

[5]     According to counsel for YAP, United States Bankruptcy Judge Jeffrey Bohm, who has presided over various bankruptcy matters involving Acord, Marcella Ortega, and Young
                                                                                        (continued...)

until April 29, 2009, when the attorney was granted leave to withdraw.  (Md. Docs. # 267, # 277).

Acord's current incarceration stems from a series of orders entered by United States District Judge Richard Witness. Titus, who has presided over the Maryland litigation since its inception in 2003.  Those orders, which include a sanction order, a contempt order, and finally, an arrest order, are summarized briefly below.

### A.    The November 17, 2008 Sanction Order

During the Maryland lawsuit, YAP sought sanctions under Rule 11 of the Federal Rules of Civil Procedure after Acord filed a motion for the improper purposes of harassing YAP, to cause unnecessary delay, and to needlessly increase the costs of litigation. (Md. Doc. # 220).  On November 17, 2008, Judge Titus granted the motion for sanctions against Acord and ordered him to pay YAP $24,357.00 in attorneys' fees.  (Md. Doc. # 245).

Acord did not pay the sanction within the time allotted by Judge Titus.  Thereafter, YAP moved for a default judgment or, in the alternative, for summary judgment on the merits of the case against Acord and Marcella Ortega.[6]  More pertinent, YAP filed a motion to hold Acord in contempt of court for failing to pay the November 2008 $24,357.00 sanction imposed by Judge Titus.  Judge Titus considered all of these issues at a hearing on March 23,

---

[5]      (...continued)
Again Nutrients/Supplement Spot, has determined that Acord owns or controls his mothers affairs.

[6]      Acord also failed to comply with court orders and the federal rules of procedure by filing his portion of a joint pre-trial order.

2009.

**B.      The March 25, 2009 Contempt Order**

Following the March 23, 2009 hearing, Judge Titus found that Acord had the present

financial ability to pay the Rule 11 sanction of $24,357.00.  Judge Titus accordingly granted

YAP's motion for contempt and ordered Acord to submit a highly detailed account of his

claimed inability to pay:

> [W]ithin thirty (30) days of this Order, Defendant John Acord shall make full
> payment of the sanctions imposed against him and in favor of the Plaintiffs on
> November 17, 2008, in the amount of **$24,357.**  If Defendant Acord is unable
> to pay in full, he shall submit to the Court within thirty (30) days of this Order
> a highly detailed affidavit concerning the financial circumstances that render
> him unable to pay.  This affidavit shall include information about *any* assets,
> whether in his own or a third party's name, that Defendant Acord has had
> access to or use of in the past five (5) years, as well as any transfers of assets
> Defendant Acord has made to others in the past five (5) years[.]

(Md. Doc. # 264) (emphasis in original).  Judge Titus granted YAP's motion for a default

judgment and alternative motion for a summary judgment against Acord and Ortega, ordering

them to pay damages in the amount of "three million, eight hundred thirty-two thousand,

eight hundred thirty-two dollars and forty cents (**$3,832,832.40**)."  (*Id.*).  He also issued a

permanent injunction against the infringement of YAP's valid trademarks.  (*Id.*) (emphasis

in original).

Acord filed a motion for new trial and a notice of appeal from the sanction order, the

contempt order, and the default judgment, as well as other rulings by Judge Titus.  (Md. Doc.

# 266, # 275).  Acord also submitted an affidavit in response to the March 25, 2009 contempt

order.  (Md. Doc. # 274).  That affidavit, which is only slightly more than one page in length,

references a "Personal Financial Statement as of April 20, 2009" that was filed separately under seal.[7] (*Id.*).  Instead of providing the detailed financial information requested by Judge Titus, the affidavit supplied by Acord simply concluded that he was unable to pay the sanction because his assets were "greatly exceeded by his debts." (*Id.*).

YAP filed a motion to strike Acord's response as insufficient and asked Judge Titus to incarcerate Acord for his continued contempt.  (Md. Doc. # 278).  Acord filed more than one response to this motion.  (Md. Docs. # 286, # 290).  On June 8, 2009, Judge Titus denied Acord's motion for new trial.  (Md. Doc. # 291).  Judge Titus found Acord's affidavit to be "untimely and insufficient," and he set the contempt motion for a "show cause" hearing on July 7, 2009.  (Md. Doc. # 291).  The June 8 order specifically commanded Acord "**to appear in person at the hearing**" and to show cause why he should not be incarcerated for his failure to comply with court orders.  (*Id.*) (emphasis in the original).

On July 1, 2009, Acord filed a motion for a thirty-day continuance, explaining that his father had passed away on June 22, 2009. (Md. Doc. # 293).  Acord requested thirty days "to complete his father's affairs and to properly prepare for the Show Cause hearing set by this Court."  (*Id.*).  YAP opposed the continuance, detailing Acord's repeated excuses, delays, and contempt of court.  (Md. Doc. # 294).  Judge Titus denied the continuance on July 6, 2009, and repeated his order that Acord appear "in person" for the July 7, 2009 show

---

[7]     In the instant habeas corpus action, Acord's counsel represents that the financial statement constituted a completed Small Business Administration form, but neither party has supplied a copy of that document to this Court.  Because it has been filed under seal, this Court cannot access it in the PACER system.

cause hearing.  (Md. Doc. # 295).

Acord did not appear on July 7, 2009 and thus clearly violated Judge Titus's June 8, 2009 and July 6 orders.  At the July 7 show cause hearing, YAP presented evidence that Acord had started a new business called "Newtrients 21," and that he was once again engaged in selling health and beauty supplements on the internet.  YAP noted further that Acord had "retained legal counsel to represent him in his appeal to the Fourth Circuit while still thumbing his nose at this Court's sanction[.]."  (Md. Doc. # 299).  Therefore, YAP repeated its request for an order holding Acord in civil contempt.  (*Id.*).

C.   **The August 8, 2009 Arrest Order**

In an order entered on August 8, 2009, Judge Titus granted YAP's motion and held Acord in civil contempt of court for failing to pay the Rule 11 sanction imposed by the March 25 contempt order and for failing to appear as directed at the July 7, 2009 show cause hearing.  (Md. Doc. # 301).  In that same order, Judge Titus directed the United States Marshal to take Acord "into custody" and place him in the nearest detainment facility.  (*Id.*).  The August 8 arrest order authorizes Acord's detention until Acord "purg[es] himself of his contempt" of the Maryland district court.  (*Id.*).

Judge Titus's arrest order was docketed as a miscellaneous case in the Southern District of Texas, where Acord resides.  *See Young Again Products, Inc. v. Acord*, Miscellaneous No. H-09-0392 (S.D. Tex.).  Acord surrendered voluntarily to the United States Marshal at the federal courthouse in Houston on August 14, 2009.  Immediately after he was taken into custody, Acord initiated this habeas corpus proceeding (*Acord v. Saenz*,

7

Civil Action No. H-09-2587).

## II.   **THIS HABEAS CORPUS PROCEEDING**

Acord seeks a writ of habeas corpus under 28 U.S.C. § 2241 on the grounds that his incarceration pursuant to the arrest order is unconstitutional.  (Doc. # 1, Habeas Petition). His primary contention is that his continued incarceration violates the prohibition against imprisoning a person for non-payment of a debt.  Asserting that he is financially unable to pay the $24,357.00 sanction imposed by Judge Titus under Rule 11, Acord also complains that forcing him to "disclose and prove all of his financial transactions," as outlined in Judge Titus's contempt order, will violate his Fifth Amendment privilege against self-incrimination. Acord further argues that his confinement is unlawful for the following reasons:  (1) Judge Titus lacked authority to incarcerate him for non-payment of a sanction under Rule 11;  (2) he was held in contempt without counsel; and (3) the arrest order is void for vagueness. Acord seeks his immediate release "upon nominal bond or upon such terms and conditions as this Court may deem just and equitable and in the interest of justice."

This Court held a preliminary conference on the habeas petition on August 14, 2009. At the request of Acord's counsel, the Court set the matter for an evidentiary hearing on August 18, 2009, in order to give the parties time to prepare.  The Court stated it would address all Acord's factual and legal contentions relating to his alleged inability to purge the contempt, including without limitation his burden to establish indigency, which allegedly rendered him unable to pay the monetary sanction.

The evidentiary hearing was held as scheduled.  Acord submitted a trial brief on the

8

morning of that hearing.  (Doc. # 7).  At the hearing, Acord presented a few bank statements and credit card account records along with testimony about his financial affairs.  Acord's younger brother, Sean Ortega, also testified on Acord's behalf.  There were no other witnesses.  Counsel for YAP participated in the evidentiary hearing as an interested party and introduced additional exhibits regarding aspects of Acord's 2007 business dealings and his involvement with the new family business enterprise known as Newtrients21.[8]  (Doc. # 10).

At the close of the hearing, Acord asked the Court to release him from prison and to enter an order allowing him to pay the November 17, 2008 sanction in installments.  Both Acord and YAP requested leave to provide post-hearing briefing. Acord filed a post-trial brief, to which YAP filed a reply; Acord has filed a sur-reply.  (Docs.# 11, # 12, # 14 ). After considering all of the arguments and evidence presented at the hearing, as well as the briefing, the Court enters findings of fact and conclusions of law under the applicable law and the legal standards that govern habeas corpus review.[9]

## III.   HABEAS CORPUS LEGAL STANDARDS

Historically, the federal writ of habeas corpus has been "regarded as an extraordinary

---

[8]    Acord's testimony includes references to other entities which have not been fully identified: "Young Again, LLP," "Young Again Nutrition LLC" (a company that filed bankruptcy and may have been the predecessor to Supplement Spot), "Young Again LLC," "Young Again Ireland,"  "Young Again, LLP," and "Young Again Netherlands."

[9]    The Court explains the evidence and uses various forms of the word "find" to indicate a finding of fact, and sets forth legal principles and uses forms of the words "hold" and "conclude" to indicate a conclusion of law.  To the extent a finding of fact is more properly a conclusion of law, and to the extent a conclusion of law is more properly a finding of fact, it should be so construed.

remedy, a bulwark against convictions that violate fundamental fairness." *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993); *see also Boumediene v. Bush*, — U.S. —, —, 128 S. Ct. 2229, 2245-46 (noting that "[t[he Framers viewed freedom from unlawful restraint as a fundamental precept of liberty," and tracing the origins of the common-law writ of habeas corpus "as a vital instrument to secure that freedom"). Thus, "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States." U.S. CONST. art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it"); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

By Act of Congress, the writ of habeas corpus is available to any imprisoned individual who can demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has construed this language to require "that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed." *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989). Nevertheless, a person incarcerated for civil contempt also meets the "in custody" requirement for purposes of invoking habeas corpus jurisdiction. *Fernos-Lopez v. Figarella Lopez*, 929 F.2d 20, 23 (1st Cir. 1991) (citations omitted); *see also Duncan v. Walker*, 533 U.S. 167, 176 (2001) (noting that "federal habeas corpus review may be available to challenge the legality of . . . a state court order of civil contempt").

The habeas corpus petitioner in this case is in custody pursuant to an order entered by a district court in Maryland. Because Acord is in custody in the Southern District of Texas,

10

Houston Division, this Court has jurisdiction to consider the petition. *See Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484 (1973). Because this Court did not impose the Rule 11 sanctions against Acord or issue the order holding him in contempt, the petitioner may not challenge those orders here. As an extraordinary remedy, it is well established that habeas corpus review "'will not be allowed to do service for an appeal.'" *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quoting *Reed v. Farley*, 512 U.S. 339, 354 (1994) and *Sunal v. Large*, 332 U.S. 174, 178 (1947)). Thus, this Court's review is limited to the validity of the arrest order and the constitutionality of the petitioner's continued confinement pursuant to that order.[10] *See, e.g., Chapman v. 305th Judicial Dist. Court*, Civil No. 3:05-cv-2459, 2006 WL 297766 (N.D. Tex. Jan. 27, 2006) (observing that "[t]he purpose of a writ of habeas corpus is not to determine the guilt of the contemnor, but to determine whether he was afforded due process of law or if the order of contempt is void.") (quoting *Ex parte Binse*, 932 S.W.2d 619, 620 (Tex. App. — Houston [14th Dist.] 1996, no pet.), and citing

---

[10]    Acord has filed a direct appeal from the sanction order, the default judgment, and the contempt order that Judge Titus entered on March 25, 2009. That appeal remains pending before the Fourth Circuit, which declined Acord's request for a stay of the contempt proceeding. *See Young Again Products, Inc. v. Acord, et al.*, No. 09-1481 (4th Cir. July 8, 2009). As another district court in this circuit has recognized, collateral review is not appropriate in the civil contempt context where a petitioner's arguments are being considered on direct appeal. *In re Steinbrecher*, 599 F. Supp. 87, 89 (W.D. Tex. 1984) (observing in a civil contempt case that, typically, "a habeas corpus action will not be entertained during the pendency of a direct appeal, inasmuch as the disposition of the appeal may render the habeas action moot"). Acord may not relitigate here the legal validity of the November 17, 2008 sanction order or the March 25, 2009 contempt order.

Likewise, to the extent that Acord asks this Court to modify the sanction order to allow installment payments, the request is denied. Acord must direct this request to Judge Titus.

*Ex parte Gordon*, 584 S.W.2d 686, 699 (Tex. 1979)).

## IV.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

As outlined above, this habeas corpus case arises from a civil contempt proceeding, which resulted in Acord's imprisonment for his failure to pay a monetary Rule 11 sanction and his failure to otherwise comply with court orders.[11] Acord argues that Judge Titus lacked authority to confine him as a sanction and that the contempt order of incarceration was entered in violation of his right to counsel as well as his right to due process.   These arguments are addressed briefly in turn before discussing Acord's primary contention that incarceration is improper because he is indigent and currently lacks the financial ability to pay the sanction.   The Court also addresses Acord's related claim that he is unable to supply information regarding his assets because doing so would violate the privilege against self-incrimination found in the Fifth Amendment.

### A.   Authority to Authorize Confinement

Acord argues that Judge Titus had no authority to order his arrest for contempt of court under Rule 11 of the Federal Rules of Civil Procedure.   (Doc. # 1, ¶ 5).   Acord apparently contends that sanctions for violations of Rule 11 are limited to "monetary" and

---

[11]   Civil contempt can serve as a coercive mechanism to enforce compliance with a court order or it can be used "to compensate a party who has suffered unnecessary injuries or costs because of the contemptuous conduct." *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 400 (5th Cir. 1987) (citations omitted); *see also Quilling v. Funding Res. Group*, 227 F.3d 231, 234 (5th Cir. 2000) (defining a civil contempt sanction "as one whose purpose 'is to coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation'") (quotation omitted).   The contempt order in this case is remedial in nature because its purpose is to compensate YAP for losses in the form of attorneys' fees expended as the result of Acord's meretricious filings.

"nonmonetary directives," and that incarceration is not an option. *See* Fed. R. Civ. P. 11(c)(4). This argument, however, is not dispositive and is unpersuasive. Apart from the array of enumerated sanctions in the Federal Rules of Civil Procedure, a district court has the "inherent power to order coercive civil confinement." *Armstrong v. Guccione*, 470 F.3d 89, 101-102 (2d Cir. 2006) (citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful order through civil contempt.")). This inherent authority "is of ancient and traditional origins." *Id.* Judge Titus had ample authority to order Acord's arrest and incarceration for Acord's deliberate refusal to pay the monetary sanction as directed and his repeated disregard of court orders. [12] Acord's argument on this issue is rejected.

## B. <u>Lack of Counsel</u>

Acord argues further that Judge Titus erred by holding him in contempt while Acord lacked representation by counsel. (Doc. # 1, ¶ 4.3). As noted above, Acord proceeded *pro se* at times during the protracted litigation with YAP. However, Acord's interests were closely aligned with those of his mother, Marcella Ortega, who was represented by counsel until her attorney received leave to withdraw on April 29, 2009. (Md. Docs. # 267, # 277). Because he did not have counsel of record in Maryland when the arrest order issued on August 8, 2009, Acord contends that he is entitled to relief on the grounds that Judge Titus

---

[12] This is not a ruling on the propriety of the November 2008 sanction order or the merits of the March 2009 contempt order itself, each of which are currently pending on appeal before the Fourth Circuit.

violated his right to the effective assistance of counsel under the Sixth Amendment.  (Doc. # 1, ¶ 4.3).  For reasons outlined below, Acord does not demonstrate that he was unlawfully deprived of the right to counsel.

Where incarceration is a possibility, indigent individuals are entitled to the appointment of counsel in contempt proceedings under the Sixth Amendment and the Due Process Clause.  *See Lassiter v. Dep't of Social Svcs. of Durham County, North Carolina*, 452 U.S. 18, 26 (1981) (observing that it is the "interest in personal freedom, and not simply the special Sixth and Fourteenth Amendments right to counsel . . ., which triggers the right to appointed counsel").  The Fifth Circuit has also recognized that the right to appointed counsel exists for indigent litigants in contempt proceedings involving incarceration regardless of whether the contempt proceeding is civil or criminal.  *See Ridgway v. Baker*, 720 F.2d 1409, 1413 (5th Cir. 1983) (extending the Sixth Amendment right to counsel to contempt proceedings against indigent defendants and noting that the right, as an element of due process, turns not on whether a proceeding may be characterized as "criminal" or "civil," but on whether the proceeding may result in a deprivation of liberty).

Acord relies heavily on the Fifth Circuit's opinion in *Ridgway v. Baker*, as a basis for relief from Judge Titus's arrest order.  The decision in *Ridgway* involved a habeas corpus challenge in federal court by a father who was incarcerated for civil contempt of a state court order to pay child support.  The trial court in *Ridgway* denied the petitioner's request for appointment of counsel, believing the court lacked authority to appoint a lawyer in a civil contempt proceeding, and incarcerated the petitioner.  *Ridgway*, 720 F.2d at 1411.  The

14

petitioner claimed a denial of due process because he indisputably was indigent and his request for appointed counsel was denied.  The Fifth Circuit granted the petitioner a writ of habeas corpus, concluding he had a constitutional right to appointed counsel upon request during his contempt proceeding where incarceration was a sanction under consideration.  *Id.* at 1415.

In stark contrast to the petitioner in *Ridgway*, Acord has not shown, or even alleged, that he requested or was denied appointed counsel in the contempt proceedings before Judge Titus.  Also, as Acord admitted during the evidentiary hearing before this Court, he received some advice during the Maryland litigation from the attorney then representing his mother and their defunct company, Young Again Nutrients/Supplement Spot.  The record in the Maryland case confirms that this attorney was in communication with Acord primarily about the conduct of that litigation.  (Md. Doc. # 267, Exhibits).  It is also undisputed that Acord is represented by counsel in other cases pending in the Southern District of Texas and that he has counsel for his appeal to the Fourth Circuit in the Maryland litigation.  Likewise, Acord is represented by counsel in this habeas corpus proceeding.[13]  In addition, as discussed further below, Acord has not established that he is actually indigent and unable to afford counsel.  Thus, Acord does not show that he was held in contempt of court and incarcerated in violation of his right to counsel.

---

[13]    It also appears from comments by Acord's counsel that he may have advised Acord in regard to his July 2009 submissions to Judge Titus.  Although the record appears to confirm this (*see* Md. Doc. # 300), the Court nevertheless does not rely on this assertion, if true.

### C.   **Vagueness**

Acord argues that his custody is unlawful because the arrest order issued by Judge Titus on August 8, 2009, is vague.  (Doc. # 1, ¶ 4.3).  He complains that the order "does not specify within its four corners the reasons for his confinement and the specific acts which Acord may allegedly perform to purge himself of contempt." (*Id.*).  Acord argues, therefore, that his arrest and confinement violates due process because the August 8, 2009 order is "void." (*Id.*).

In *International Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967), the Supreme Court stated that the "deadly" weapon known as judicial contempt power may not be founded upon a decree "too vague to be understood." Here, the arrest order entered on August 8, 2009 plainly states that Acord was held in contempt for violating previous orders entered on March 25, 2009, and June 8, 2009, both of which concerned Acord's failure to pay the $24,357.00 sanction that was imposed on November 17, 2008 for Rule 11 violations.  The arrest order states that Acord is only to be imprisoned until he purges himself of the contempt.[14]  (Doc. # 1, Exhibit A).  This Court construes the August 8 arrest order to mean that Accord will be released when he pays the monetary sum due or establishes that he lacks the wherewithal to do so.[15]

---

[14]   Because Acord cannot purge his contempt for failure to appear at the July 7, 2009 show cause hearing, this Court does not consider Acord's non-appearance in its analysis.

[15]   In particular, the arrest order states as follows:  "[Acord] shall remain incarcerated pending further Order of this Court, which shall release him when he shall have purged himself of his contempt of this Court[.]"  (Doc. # 1, Exhibit A).  Strictly construed, the arrest order

(continued...)

16

Acord has not demonstrated that the order at issue is "unintelligible," or that he has been sanctioned "for disobeying a command that defies comprehension." *International Longshoreman's Ass'n*, 389 U.S. at 76. In other words, he has not shown that the arrest order is unduly vague or that it is otherwise void. Therefore, Acord fails to show that he was arrested and confined without due process.

### D. **The Merits: Indigency and Application of Fifth Amendment Privilege**

Acord argues that, by incarcerating him, Judge Titus has wielded the contempt power in violation of the prohibition against imprisonment for a debt. (*Id.*, ¶ 4.4). The Supreme Court has stated that the character and purpose of a civil contempt order is coercive, not punitive. *See Shillitani v. United States*, 384 U.S. 364, 368 (1966). Whether it is due to poverty or insolvency, a party's complete inability to comply with an order to pay court-imposed monetary sanctions is a defense to a charge of civil contempt. *See Hicks v. Feiock*, 485 U.S. 624, 638 n.9 (1988). Thus, "punishment may not be imposed in a civil contempt proceeding when it is *clearly established* that the alleged contemnor is unable to comply with the terms of the order." *Id.* (emphasis added).

In the contempt order dated March 25, 2009, Judge Titus directed Acord to present proof of his inability to pay the Rule 11 monetary sanction by providing a "highly detailed affidavit" concerning his financial circumstances, including "information about *any* assets,

---

[15]     (...continued)
appears to contemplate that Acord remain incarcerated pending further review by Judge Titus, who issued the August 8, 2009 order authorizing Acord's arrest and imprisonment for contempt of court. To date, Acord has not filed any challenge to the order with Judge Titus; nor has Acord filed a notice of appeal from that decision.

whether in his own or a third party's name," that he has had "access to or use of in the past

five (5) years," as well as information on any transfers of assets to others during that same

time-period.  Records presented in the Maryland case confirm that Acord did not comply

with Judge Titus's order and he did not present the requisite proof of his financial inability

to pay.  In the present habeas corpus proceeding, Acord argues that he cannot be required to

produce proof of his indigency because disclosure of his financial records would violate his

Fifth Amendment privilege against self-incrimination.  The Court pauses briefly to address

Acord's argument under the Fifth Amendment before turning to his claim of indigency.

### 1.     Fifth Amendment Privilege Against Self-Incrimination

The Fifth Amendment states that "[n]o person . . . shall be compelled in any criminal

case to be a witness against himself." U.S. CONST. amend. V.  To qualify for the Fifth

Amendment privilege, a communication must be testimonial, incriminating, and compelled.

*See Hiibel v. Sixth Judicial Dist. Court of Nevada*, 542 U.S. 177, 189 (2004) (citing *United*

*States v. Hubbell*, 530 U.S. 27, 34-38 (2000)).  The Fifth Amendment privilege "protects an

accused only from being compelled to testify against himself, or otherwise provide the State

with evidence of a testimonial or communicative nature." *Schmerber v. California*, 384 U.S.

757, 761 (1966).  "[T]o be testimonial, an accused's communication must itself, explicitly

or implicitly, relate a factual assertion or disclose information." *Hiibel*, 542 U.S. at 189

(quoting *Doe v. United States*, 487 U.S. 201, 210 (1988)).

In an abundance of caution, the Court held a brief *ex parte* hearing on August 18,

2009, to determine whether the Fifth Amendment privilege applied.  The Court held that the

18

records at issue — which comprise records from a checking account, two credit card accounts, and two business-related accounts for the period of mid-August 2008 through mid-August 2009 — were not testimonial in character.[16] *See Doe*, 487 U.S. at 210. The Court also was unpersuaded that Acord had a reasonable apprehension of criminal prosecution based on the records in issue.

More importantly, Acord's plea of the privilege against self-incrimination fails because it is inapplicable in the proceeding at bar. It is well established that a contemnor bears the burden of producing evidence of his inability to comply with a court-imposed sanction. *See, e.g., United States v. Rylander*, 460 U.S. 752, 757 (1983); *McPhaul v. United States*, 364 U.S. 372, 379 (1960); *Maggio v. Zeitz*, 333 U.S. 56, 75-76 (1948). If he "offers no evidence as to his inability to comply . . . or stands mute," he has not met his burden. *Maggio*, 333 U.S. at 75. The Supreme Court has made clear that a contemnor may not hide behind the Fifth Amendment privilege where he has the burden to produce evidence. *See Rylander*, 460 U.S. at 758 (explaining that this would "convert the shield against compulsory self-incrimination which it was intended to be into a sword whereby a claimant asserting the privilege would be freed from adducing proof in support of a burden which would otherwise have been his"). Thus, the Court reaffirms the ruling made at the August 18, 2009 hearing, and rejects Acord's contention that he is not required to present documents under the Fifth

---

[16] Initially, the Court considered these records *in camera*, outside the presence of YAP's counsel. The records were admitted at the hearing and Acord provided copies of them to the Court. Because Acord has yet to file copies with the Clerk's Office for purposes of the record, the Court refers to these records as Petitioner's Hearing Exhibits for identification.

Amendment privilege against self-incrimination.

### 2.      Analysis of Acord's Claim of Indigency

For Acord to purge his contempt and obtain his release from custody, he must either pay the sanction or prove he is indigent, as the term is defined in this context.  The Fifth Circuit has held that a contemnor must "present evidence establishing not only that he has no funds but also that he has no source of funds."  *Ridgway*, 720 F.2d at 1415 (citation omitted).  Such proof consists of three elements:

(1)      that the relator lacks sufficient personal or real property which could be sold or mortgaged to raise the needed sum; and

(2)      that the relator has unsuccessfully attempted to borrow the sum from financial institutions . . . ; and

(3)      that the relator knows of no other source, including relatives, from whom the sum could be borrowed or otherwise secured.

*Id.* (citation omitted).  The Court afforded Acord a full opportunity to meet this burden during the August 18 evidentiary hearing.

Acord testified on his own behalf and called only one witness, his brother, Sean Ortega ("Ortega" or "Sean Ortega").  Acord submitted bank and credit card statements dating back one year from the date of the August 18, 2009 hearing.  He also offered three other documents that are described below.  YAP offered various documents, such as publicly available website and domain information about the family's new company, Newtrients21,[17]

---

[17]      During the hearing, the company was referred to occasionally as "Newtrients21 LLC."  The exact name, ownership, and business structure of this entity have not been established on this
(continued...)

a sample of the newsletter that Acord wrote or edited for the company as promotional material, and several bank records from 2007.  (Doc. # 10, YAP's Hearing Exhibits).

The Court credits some but not all of the testimony given by Acord and Ortega at the hearing.  For reasons explained in more detail below, the Court does not credit Acord's contention that he is unemployed and finds that he has been working for Newtrients21, in which he clearly plays a significant role.  If this were a legitimate business, Acord would be paid a meaningful salary for his services to the company.  The Court further finds that, to the extent Acord has no assets in his own name, this circumstance has been created intentionally to avoid his responsibility for the sanction imposed by Judge Titus, among other financial obligations.  Acord's claim of poverty, and his associated contention that he is unable to borrow or otherwise obtain funds to pay the sanction, is not supported by adequate documentation and is not credited.  In that regard, Acord's evidence about the financial status of his family members and the availability of other sources of funds is materially incomplete. Thus, the Court is not persuaded that Acord is indigent under the factors articulated in *Ridgway* and therefore unable to pay the $24,357 sanction imposed by Judge Titus.  The Court's analysis follows.

---

[17]  (...continued)
record. The Court makes no findings in this regard.  It appears that Newtrients21 is a "d/b/a" of Hygea, LLC, an entity Sean Ortega claims to control. The witnesses testified that Newtrients21 was created by Ms. Ortega and started to operate in March 2009.  Ortega reported that Ms. Ortega "abandoned" the name and he took it over.  He cannot recall ever signing any documents concerning the transfer or paying any consideration for it.  He nevertheless claims to "own" the entire entity.  No documents were produced to support any of this testimony.

Acord states he has been unemployed since March 2009, when the Chapter 11 bankruptcy trustee for Supplement Spot (Ben Floyd) sold the company and terminated Acord's employment there. By way of background, it appears that Acord and his mother ran Young Again Nutrients and, subsequently, Supplement Spot, and that Sean Ortega also had a role managing the company's website. In the last few years, these family members worked at Supplement Spot with the approval of bankruptcy trustee Ben Floyd. Acord was paid more than $6,100 per month, Ms. Ortega received in excess of $10,000 per month, and Sean Ortega received $6,000 per month for the services they provided to the company. As Supplement Spot was being sold by the bankruptcy trustee, Acord and his family members promptly shifted their time and attention to Newtrients21, which was supposedly formed by his brothers Sean Ortega and Kenneth Acord upon the sale of Supplement Spot. The Court does not credit Acord's assertions that he has not been working or otherwise employed since March of 2009. Acord presented no evidence that he has conducted a meaningful search for new employment. Rather, the available evidence (described below) strongly suggests that Acord has spent his working hours engaged in marketing and generating business for Newtrients21, as well as performing other tasks on that company's behalf.

Acord, who denies having knowledge of the company's inner workings, testified generally that Newtrients21 has not made sufficient profit from which to pay the sanction. Sean Ortega, who reportedly runs the company with Kenneth Acord, also insisted that John Acord has no interest in Newtrients21 and asserted that the fledgling company lacked funds to pay the sanction on Acord's behalf. However, Acord testified from his own personal

knowledge that Newtrients21 currently earns a "gross" income that varies between $25,000

and $30,000 per month, while spending approximately 40% of its revenue on inventory,[18]

$3,000 to $4,000 on payroll, and $2,500 on rent for a warehouse that is located on the

property where Sean Ortega lives, which he and Ms. Ortega own.[19]  Neither Acord nor Sean

Ortega provided any documents to account for these funds or to document what other

expenses the business might have.

The Court is unpersuaded by the superficial testimony presented about Newtrients21's

financial status and by the witnesses' conclusory protestations that the company lacks funds

to pay the sanction.  Key documentary evidence is lacking and Acord's testimony about his

own financial records in relation to the company's affairs do not support his position that he

has no involvement in the company's management and therefore no financial interest in the

business.  For instance, Acord points to funds that he received from his own "PayPal"

account, which is used by Newtrients21 as one alternative form of payment for customers.[20]

(Petitioner's Hearing Ex. # 3).  Acord nevertheless states that transactions through his PayPal

---

[18]    In contrast to Acord's testimony that Newtrients21 spends 40% of its gross income (between $10,000 and $12,000) per month on inventory, Ortega testified that the amount was much lower, estimating that the company spent only about $5,000 on inventory each month.

[19]    This is somewhat inconsistent with Ortega's testimony that the company employs "a couple" of individuals who earn $300 to $400 per week.  Ortega did not provided detailed job descriptions or titles for these positions, but there is no indication that these individuals have executive responsibilities at Newtrients21 or that they perform anything more than clerical or sales support.

[20]    Acord's PayPal records show a balance of $1,309.02 in his account as of August 17, 2009. (Petitioner's Hearing Ex. # 3).

account constitute about 10% of Newtrients21's business.  In light of Sean Acord's testimony

that all three brothers (Sean, Kenneth, and John) have Paypal accounts, the Court finds it

incredible that Acord's personal account would be the only one used for Newtrients21's

business unless he were closely connected with the company.  Further, evidence presented

by YAP demonstrates that, as of August 17, 2009, Acord's email account was the only

contact for Newtrients21 given to Network Solutions (the registrar of internet domain

names).  (*See* YAP's Hearing Ex. # 2, at 3).  This evidence shows that Acord's e-mail

account was listed as the only "administrative" contact, the only "technical" contact, and the

only "billing" contact for Newtrients21.  (*Id.*)  The domain name for that company was

updated as recently as April 23, 2009.  (*Id.*)

Acord's own financial documents, limited as they are, further undercut his claim that

he has no meaningful role in the operation of Newtrients21.  Acord presented credit card and

checking account statements from accounts at Bank of America[21] and a statement from a

Capital One credit card account that reportedly bears his name.[22]  These records reflect that

the accounts have credit limits of $1,200 or $2,000, respectively, and that his available

---

[21]   The Court finds that the accounts are ones managed by Acord, but finds it irregular at best
that neither account bears his or anyone else's name.  The records demonstrate that, as of
August 17, 2009, Acord's Bank of America credit card had a current balance of $191.08 and
an available credit limit of $1,007.92.  (Petitioner's Hearing Ex. # 1).  Acord's Bank of
America checking account was overdrawn as of August 17, 2009 in the amount of $71.94.
(Petitioner's Hearing Ex. # 2).

[22]   The Capital One credit card records show that, as of August 4, 2009, Acord had a balance
on his Capital One card of $336.27, and an available line of credit in the amount of
$1,663.73.  (Petitioner's Hearing Ex. # 5).

balances, singly or when accumulated, are insufficient to pay the $24,357 sanction.  The bank records, however, are double-edged swords.  It is clear that Acord uses each account to conduct Newtrients21 business, thus supporting an inference of some employment and/or ownership involvement with that entity.[23]

The Court is further unpersuaded that Acord's personal bank accounts and credit cards are the only ones available to him or to Newtrients21 as sources of funds to pay the sanction. Indeed, the Court's skepticism is fueled in part by a bank statement dated June 29, 2007, of an account owned by Ms. Ortega "dba Newtrients21" at Amegy Bank, that is labeled a "small business checking " account.  (YAP's Hearing Ex. # 1).  While both Acord and Sean Ortega testified that they did not begin to do business under the name Newtrients21 until March 2009, after the bankruptcy trustee's sale of Supplement Spot, this account shows substantial deposits and other credits in 2007,[24] indicating that the business was operating in some capacity for almost two years *prior to* March 2009.  Acord failed to offer a convincing explanation for the large deposits and other transactions depicted in this exhibit or to provide any documentation for several transfers of funds that he made to himself and to his mother. (YAP's Hearing Exs. # 8, # 10, # 14, # 16).  Acord's testimony on this issue is not credited.

---

[23]     As discussed elsewhere in the opinion, Acord admits that he has used the account to pay business and travel-related expenses undertaken to market and develop Newtrients21. Likewise, Acord testified that he paid for a variety of business expenses attributable to Newtrients21, including the wireless bill for cellular telephones used by all three brothers.

[24]     The account received more than $108,000 in deposits for the period May 31, 2007, through June 29, 2007, including one deposit of $80,397.58.  (YAP's Hearing Ex. # 1).  During this time period, the account had daily balances as high as $156,538 (June 4) and $144,629.50 (June 6), and a closing balance of $73,534.09 on June 27, 2007.  (*Id.*).

These records, taken together with testimony offered at the hearing, fail to support Acord's claim that he is not employed by Newtrients21 and that he lacks an interest in that company that is commensurate with his active business role. Acord relies on testimony of Sean Ortega, who claims to run the company with Acord's other brother, Kenneth Acord, who pays all of the bills and handles the finances. The Court is unpersuaded. As the purported founder and co-owner of this small family-run business, Sean Ortega's knowledge of Newtrients21's finances was minuscule and woefully inadequate for a person actively involved in management or the day-to-day operations. Further, Ortega demonstrated no understanding of any other aspect of the business. His interest, experience, and education appears limited to web-page design.

Although Kenneth Acord is touted as the person responsible for Newtrients21's finances, Acord did not call him as a witness to explain his role at the company and he did not provide any additional information about Kenneth Acord's personal qualifications or assets. The Court does not credit Sean Ortega's claim that Kenneth Acord is the only person who handles the finances or writes checks for Newtrients21. Acord has failed to present any of Newtrients21's business records to corroborate this self-serving assertion (or any other statement pertaining to the company's finances). Neither Acord nor Sean Ortega provided any information showing that Kenneth Acord has any pertinent business experience that would render him qualified to control the company's financial affairs.[25]  The evidence about

---

[25]  Kenneth Acord apparently worked in an unspecified position at a hotel in California before
(continued...)

Newtrients21's formation and its business structure is wholly incomplete and unsubstantiated.[26]

Other evidence contradicts Acord's assertion of lack of involvement in Newtrients21. It appears that Acord is actively engaged in Newtrients21's business growth and development. In that respect, both Acord and Sean Ortega acknowledged that Acord engages in marketing for the company through his work on the newsletter, payment of the bills for its distribution to existing and potential customers,[27] attendance at trade shows or

---

[25]    (...continued)
he returned to Texas and purchased a parcel of property next to his mother's residence, which she owns with Ortega. Ms. Ortega owns no property with Acord, presumably because he repeatedly has been sanctioned by courts for misconduct. The Court notes further that Acord has a criminal record. He was convicted of securities fraud in 1996, and sentenced to serve 51 months in federal prison. *See United States v. Acord*, No. 3:95-00121 (N.D. Tex.). Counsel noted informally that Acord met Mason while both were incarcerated during that period. Acord was ordered to pay restitution in the amount of $10,000 in that fraud case, of which he reportedly still owes approximately $8,000. In addition, Acord has a prior conviction on unspecified federal charges in Nevada, which resulted in one 10-year term and five 5-year terms of imprisonment. *See Acord v. United States*, 916 F.2d 716, 1990 WL 159518 (9th Cir. 1990) (unpublished table opinion).

[26]    In addition, Acord also testified at the hearing that his mother had "income," although he did not offer any specific information about the extent of her assets. Likewise, there is no evidence what role Ms. Ortega plays at Newtrients21 or if she is paid a salary or stipend. While she apparently owned and worked at Young Again Nutrients and Supplement Spot (with Acord), she is now 86 years old, and the evidence in this record suggests she is not an key executive or employed with Newtrients21. Due to the lack of evidence, the Court does makes no findings in this regard.

[27]    Acord made business expenditures for Newtrients21 from his personal bank account , mainly for marketing efforts such as the fee charged by "Benchmark Email," the distributor of an electronic newsletter for the company and possibly other advertising. (Petitioner's Hearing Ex. # 4). Acord explained that he helps prepare that newsletter, entitled "Longevity News," which is distributed over the internet to past and potential customers of Newtrients21.

27

conferences, and other activities.[28]  Indeed, there is no evidence that anyone else performs

these functions on behalf of the company.  Incredibly, however, Ortega did not know how

or if Acord was reimbursed for his expenditures.

 As outlined above, Acord must demonstrate he has no assets in his own name and

lacks access to assets or other sources of funds — including those belonging to family

members — that could be used to pay the sanction.  *Ridgway*, 720 F.2d at 1415.  On this

limited record, it appears undisputed that Acord does not own any real estate in his own

name.  Acord lives with his mother at 1919 Cattle Drive, Magnolia, Texas.[29]  Sean Ortega

lives at a residence nearby, located at 1935 Cattle Drive on 40 acres of land.  That property

also features a sizeable warehouse, which is used as a business location for Newtrients21.[30]

There is no evidence in the record establishing the title owners of these properties or of any

other real estate owned by Acord's family.[31]  Likewise, there is no evidence establishing the

---

[28] The Capital One credit card statements and Acord's accompanying explanation reveal that he uses that account to pay various expenses of Newtrients21.  (Petitioner's Hearing Ex. # 5).  For example, Acord testified that he took a trip on behalf of Newtrients21 to a nutritional supplements convention in Las Vegas.  Interestingly, according to his billing statements, Acord was in Las Vegas for that convention on July 11, 2009, the same week that he was ordered to attend the July 7, 2009 show cause hearing in Maryland.

[29] According to the witnesses, Acord's mother, Ms. Ortega, purchased the property for $840,000 in 2004 and put her youngest son, Sean Ortega, on the deed as a co-owner.  The evidence also reveals that Acord's brother Kenneth actually lives at 1919 Cattle Drive, despite allegedly owning a residence on Deer Lodge Road in Magnolia, Texas.

[30] The use of the home and the warehouse are unclear.  There are indications on the Newtrients21's website that some operations may be conducted from Ireland or elsewhere.  (*See* YAP's Hearing Ex. # 2, # 3, and # 4).

[31] The family previously owned and may still own a lot in between these parcels, 1928 Cattle

(continued...)

potential value of these the properties, or the equity, if any, held by the family members.[32]

Inexplicably, although Ortega was employed by Supplement Spot through at least December 2008, he testified that no mortgage payments had been made on his home at 1935 Cattle Drive for fourteen months.  He added that no mortgage payments have been made for eight months on the 1919 Cattle Drive home where Acord and possibly Kenneth lives with their mother.  Acord has introduced a letter from counsel for the lender giving notice of an intent to foreclose on the 1935 Cattle Drive property on September 1, 2009.  (Petitioner's Hearing Ex. # 6).  While foreclosure on this property may pose a financial problem for Sean and Ms. Ortega, the timing of the notice is curious in light of the sizable judgment entered by Judge Titus against Acord and Ms. Ortega in March 2009.

In addition to Acord's lack of personal ownership of real property, it is not clear on this incomplete record whether Acord or his family members can borrow funds to pay the sanction.  Acord states he is unable to borrow money from any lenders, or from his mother or his two brothers because they, too, are "broke."  Notably, Acord did not testify or present any documentary or other probative evidence that he attempted to obtain a commercial loan

---

[31]   (...continued)
Drive.  In the real estate listing for 1919 Cattle Drive, there is a reference to the fact that the home sits on 2 acres with "26 acres available."  (Petitioner's Hearing Ex. # 7).  Both Acord and Sean Ortega testified, however, that Kenneth Acord purchased and then sold this parcel. The outstanding debt on each property is not in the record.

[32]   Acord testified and real estate listings confirm (Petitioner's Hearing Ex. # 7) that 1919 Cattle Drive is listed for sale for $445,000.00.  At the time of the hearing, 1935 Cattle Drive was listed for $1.1 million.  (*See* Petitioner's Hearing Ex. # 8).   It is unclear whether or how Sean Ortega paid for the 1935 Cattle Drive property.

or to borrow from his family.  Sean Ortega did testify that he had no money to give or loan Acord to pay the sanction.  Ortega added that he believed his credit was not good enough at this point to get a loan on his brother's behalf.  Ortega admitted, nevertheless, that he had not applied for a loan or even made inquiry.

In spite of these purported difficulties, the Court is unpersuaded that Acord and his family members lack other potential assets to contribute towards payment of the sanction. In addition to possible revenues from Newtrients21, the family owns at least two automobiles that may have equity.  In particular, Acord owns a 2007 Mercedes Benz 350R that he bought for his mother in 2006, despite the fact that she rarely drives.[33]  Sean Ortega owns a 2004 BMW, for which he has virtually completed the payments.[34]

As counsel for YAP observed, Acord and his family clearly operate as a unit and they are receiving funds from one or more sources that have yet to be identified and documented for purposes of the record.  Indeed, the absence of key family members from the evidentiary hearing is significant and troubling.  There is no evidence that they were unavailable to testify and all indications are to the contrary.  In that respect, Acord shares a home with his mother, and he testified that his brother Kenneth has also lived there.  They all live within the Southern District of Texas.   Acord offered no explanation for the failure of these

---

[33]     Acord claims to owe at least $30,000.00 on that vehicle.  He could not explain why he bought that car for a person who rarely drives and ostensibly had income higher than his own at the time, or why continues to make the monthly payment of approximately $1,150 for that car.

[34]     Acord testified that he owns a 1983 Mercedes 190D, but he reports that it does not run. Acord has a 2007 Hyundai Santa Fe, but owes at least $20,000.00 on the vehicle.

important witnesses to attend the hearing or to provide any evidence on his behalf.

The absence of detailed financial records is also notable.  Newtrients21 operates (at least in part) out of a warehouse on the property owned by Sean Ortega in Magnolia, which is adjacent to the home that Acord and Ms. Ortega share.  There is no valid reason that business records could not have been obtained and presented at the hearing.

Further, it is undisputed that family members have paid at least three other Rule 11 sanctions imposed against Acord in 2008.  (YAP Hearing Ex. # 18).  Acord admitted that his brother Kenneth paid a Rule 11 sanction in the amount of $18,000 in at least one other case. Acord also obtained value and benefitted from legal counsel retained by his mother in the Maryland litigation.  The family company, Supplement Spot, and family members have been represented by the same counsel who appears for Acord in this case.  This record shows that, when Acord and the family deem it necessary, they find funds to pay bills or to obtain legal assistance.

The Court concludes, therefore, that Acord has failed to meet his burden to establish by a preponderance of the evidence that he is indigent and unable to pay the Rule 11 sanction imposed by Judge Titus.  It follows that he is not entitled to habeas corpus relief.

## V.   <u>CONCLUSION AND ORDER</u>

Based on this record, which constitutes a grossly incomplete picture of Acord's potential ability to pay the sanction, the Court concludes that Acord has not met his burden to show that he is presently unable to satisfy the sanction imposed by Judge Titus.  As a result, Acord's petition for a writ of habeas corpus is denied at this time.  For the foregoing

reasons, it is

      **ORDERED** that John Acord's Petition for a Writ of Habeas Corpus (Doc. # 1) is

**DENIED**.

      The Clerk will provide a copy of this order to the parties.

      SIGNED at Houston, Texas, on August 28th , 2009.

                              Nancy F. Atlas
                       United States District Judge